UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WENDI FERGUSON SELLERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:97CV2260 FRB |
| | ) |
| MARY E. PETERS,[1] Secretary of | ) |
| Transportation, U.S. Department | ) |
| of Transportation, et al., | ) |
| | ) |
| Defendants. | ) |

### **MEMORANDUM OPINION**

This cause is before the Court upon remand by the Eighth Circuit Court of Appeals in <u>Sellers v. Mineta</u>, 358 F.3d 1058 (8th Cir. 2004). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### I. Procedural History

Plaintiff Wendi Ferguson Sellers initiated this cause of action in this Court on November 7, 1997, after having been terminated from her employment as an Air Traffic Control Specialist (ATCS) with the Federal Aviation Administration (FAA) effective September 30, 1997. On March 31, 2000, a jury sitting in this district found the FAA to have unlawfully discriminated against plaintiff in her employment on account of her gender and in

---

[1] Mary E. Peters became Secretary of Transportation on September 30, 2006. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mary E. Peters is substituted, therefore, for Former Secretary Norman Y. Mineta as defendant in this cause.

retaliation for her complaints of sexual harassment which resulted in the unlawful termination of her employment, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, et seq. Judgment for plaintiff was thereafter entered on the jury's verdict.

On April 14, 2000, plaintiff filed a Motion for Equitable Relief in which she sought reinstatement to her position with the FAA as an ATCS, or, in the alternative, an award of front pay. After the parties completed discovery on the motion, the matter was heard before the undersigned on November 19, 2001. On December 13, 2001, upon review of the trial record, coupled with the testimony and evidence adduced at the motion hearing, the Court entered Findings of Fact and Conclusions of Law in which it was determined that reinstatement to plaintiff's position with the FAA was impracticable in the circumstances. The Court therefore awarded front pay in lieu of reinstatement, with such award totaling $638,293.99. An Amended Judgment was entered that same date.

Defendant Secretary of Transportation (Secretary) timely appealed the Court's determination, arguing that plaintiff's post-termination conduct barred her reinstatement with the FAA and thereby precluded any award of front pay. In the alternative, defendant Secretary argued that the award of front pay was excessive. The Eighth Circuit Court of Appeals heard argument on the appeal on April 14, 2003.

On February 24, 2004, the Eighth Circuit determined, as

a matter of first impression, that if a plaintiff's own misconduct precludes reinstatement, then the plaintiff may be precluded from an award of front pay as well: "It would be inequitable for a plaintiff to avail herself of the disfavored and exceptional remedy of front pay where her own misconduct precludes her from availing herself of the favored and more traditional remedy of reinstatement." Sellers v. Mineta, 358 F.3d 1058, 1064 (8th Cir. 2004). Finding the relevant factual findings not to have been made by the district court in relation to this question, the Eighth Circuit vacated the award of front pay and remanded the matter to this Court to determine, on the existing record, whether plaintiff's post-termination misconduct actually precludes her reinstatement with the FAA and thus precludes an award of front pay.

> [W]e vacate the district court's award of front pay and remand for further findings of fact and conclusions of law to be made on the existing record. No reopening of the evidentiary record shall occur, but the court may, of course, in its discretion call for additional briefing and argument. On remand, in order to establish that Sellers' front pay remedy should be limited by her post-termination conduct, the defendant must convince the court by a preponderance of the evidence that Sellers' post-termination conduct renders her ineligible for reinstatement under the FAA's employment regulations, policies and actual employment practices.

Id. at 1065.

To guide this Court in making this determination, the Eighth

- 3 -

Circuit instructed that it must look to "the employer's actual employment practices and not merely the standards articulated in its employment manuals" and make a "specific finding" as to whether "FAA employment regulations and policies as applied to Mrs. Sellers do in fact bar her reinstatement or employment as an [ATCS]," that is, "whether [plaintiff's] conduct alone made her ineligible for reinstatement." Id. at 1064-65. "That the FAA chose not to offer Sellers reinstatement does not equate with finding that Sellers' conduct alone made her ineligible for reinstatement." Id. at 1065.

Mandate issued on the Eighth Circuit's decision on April 16, 2004.

Upon remand, and in accordance with the Eighth Circuit's directive, the parties were invited by this Court to submit briefs on the following issues:

1. Whether plaintiff's post-termination conduct renders her ineligible for reinstatement as an Air Traffic Control Specialist (ATCS) with the Federal Aviation Administration (FAA) under the FAA's employment regulations, policies and actual employment practices; and

2. If plaintiff's post-termination conduct does not render her ineligible for reinstatement as an ATCS with the FAA, whether the preferred equitable remedy of reinstatement is nevertheless impracticable in the circumstances of this cause.

See Order filed Dec. 15, 2004.

Defendant Secretary's opening brief, filed January 18, 2005, addressed only the first issue above. Plaintiff filed her responsive brief on February 2, 2005, to which defendant replied on

February 9, 2005.

Against this backdrop, and on the existing record, including that adduced at the trial of this cause, the undersigned makes the following findings and conclusions:

## II.  Findings of Fact

A.  Relevant Employment History

Plaintiff Wendi Ferguson Sellers was employed by the FAA from September 1987 through September 1997 as an Air Traffic Control Specialist (ATCS). From July 1993 through September 1997, plaintiff worked in this capacity at Lambert-St. Louis International Airport (Lambert) in St. Louis, Missouri. Plaintiff was unlawfully terminated from her employment with the FAA effective September 30, 1997.

From October 1997 through April 2000, plaintiff worked as a personal banker for Bank of America (BOA) in Fairview Heights, Illinois. In March or April 2000, BOA became aware that a loan application processed by plaintiff in December 1999 may have been unauthorized. When BOA officials met with plaintiff regarding this matter in April 2000, plaintiff admitted to them that she had processed an unauthorized loan application in the name of her husband's ex-wife, Sherri Sellers, for the sole purpose of obtaining Ms. Sellers' credit history. The application was processed by plaintiff in such a way that an indefinite hold was placed upon the application, and no monies were obtained. Plaintiff was terminated from her employment at BOA upon her

admission that she processed an unauthorized loan application. No evidence before the Court shows that plaintiff was charged with any criminal offense in relation to her conduct at BOA.

Immediately upon her termination from BOA, plaintiff obtained employment with Pratt & Whitney as an office manager, where she continued to be employed at the time of the motion hearing in November 2001.

B. Reinstatement Decision

In April 2001, a meeting was held between Maureen Woods, FAA's then-Deputy Director of Air Traffic, and others regarding plaintiff's possible reinstatement with the FAA at the St. Louis Air Traffic Control Tower at Lambert.[2] As Deputy Director, Ms. Woods was in charge of the national program of air traffic, which included hiring. Ray Martinez, an attorney of record for defendant Secretary in the instant cause, as well as another FAA attorney, participated in the meeting. Neither plaintiff nor any representative of plaintiff was present at the meeting.

During the course of this meeting, discussion was had regarding plaintiff's actual operational performance as an ATCS, and the possibility of plaintiff returning to the FAA at a lower level facility was considered. In the midst of discussing facilities at which plaintiff could work commensurate with her

---

[2]This meeting was held in relation to the instant litigation for the sole purpose of making a decision as to reinstatement so that the defendant could advise this Court as to its position regarding same.

abilities, an FAA attorney orally introduced information regarding plaintiff's termination from BOA.[3]  The discussion then turned to trustworthiness and upholding the laws and regulations of the United States.  A determination was made at that time not to reinstate plaintiff inasmuch as the job of an air traffic controller requires a high level of integrity and honesty.  No further process was had regarding plaintiff's possible reinstatement.  No evidence before the Court shows that FAA employment regulations and policies were consulted and/or relied upon by the FAA in making its decision not to reinstate plaintiff as an ATCS.

No written documentation or report regarding plaintiff's BOA employment was presented during the meeting.  Nor did Ms. Woods or any other meeting participant request additional information regarding plaintiff's BOA employment.  Instead, Ms. Woods considered only that information orally offered by FAA attorneys at the meeting inasmuch as she was "rushed for time" and "needed to get back to the court" with the decision.  (Hrg. Tr. at 195.)

C.  FAA's Employment Regulations and Policies

The FAA's Human Resources Employment Operating Instructions (HROI) provide that, upon referral, a "suitability determination" is to be performed by the Human Resources Management Division (HRMD) on "[a]ny applicant" where there exists evidence of

---

[3]Ms. Woods was unable to recall whether the attorney providing the information was Mr. Martinez or the other FAA attorney present at the meeting.

certain defined issues, including dishonesty.[4] (Secy's Hrg. Exh. J at 1.) Suitability determinations are also performed on persons currently employed by the FAA as well. (Id. at 6, 7, 8, 12.) No evidence before the Court shows by whom referrals to the HRMD for suitability determinations are made.

The HROI directs the HRMD adjudicator to engage in defined procedural steps in determining suitability, and within such steps permits the adjudicator to consider and weigh undefined matters, such as the "circumstances of the conduct" and "additional considerations." (Secy's Hrg. Exh. J at 5-8.) An official suitability determination cannot be performed without the adjudicator's review of relevant documents, including the application and related information such as investigative reports. Whether and to what extent an applicant/employee's "issue" affects that individual's conduct rating is within the discretion of the adjudicator.

In making a suitability determination, the adjudicator must first determine an individual's "basic suitability," that is, "determine[] whether there is an issue or combination of issues that would clearly disqualify the person from any position at the FAA." (Secy's Hrg. Exh. J at 5.) Such issues are rated on the

---

[4]Other issues suitable for reference include pattern of abuse of alcohol; pattern or abuse of illegal drugs; rape, sexual assault, or other criminal misconduct; pattern of financial irresponsibility; disruptive or violent behavior; destruction of property; felony conviction; and illegal use of firearms or other weapons. (Secy's Hrg. Exh. J at 1.)

basis of their seriousness and are defined in suitability grids:

> 1. "A" -- Minor: Conduct or issue which, standing alone, would not be disqualifying, under suitability, for any position.
> 2. "B" -- Moderate: Conduct or issue which, standing alone, would probably not be disqualifying, under suitability, for any position.
> 3. "C" -- Substantial: Conduct or issue which, standing alone, may probably be disqualifying, under suitability, for any position.
> 4. "D" -- Major: conduct or issue which, standing alone, would be disqualifying, under suitability for any position.

(Id.)

Only when an individual is rated suitable at this basic suitability adjudication level does the process continue to determine the person's suitability for the position's risk and for the performance required by such position. (Id. at 7-8.) Where it is determined at the basic suitability adjudication level that the individual has a Category D issue, s/he would be disqualified from FAA employment, and no further steps in the adjudication process are taken.

The HROI Category D issues relating to honesty are comprised of the following:

> Pattern of dishonesty as reflected in
> - disregard for truth
> - conviction records
> - abuse of trust
> - employment records
>
> blackmail; counterfeiting; extortion; robbery, armed; intentional false statement or

>           deception or fraud in examination or
>           appointment[.]

(Sec'y's Hrg. Exh. J at 9.)

If, at any point in the suitability adjudication process, the HRMD determines that a person is not suitable for employment or continued employment with the FAA, the HRMD is directed to "notify the person in writing, stating the nature of the proposed action and the specific, detailed reasons for it. . . . The individual shall be given 15 days to respond with additional information." (Sec'y's Hrg. Exh. J at 12.) If additional information is submitted, the HRMD is to review the case and may request further information and/or conduct a re-investigation. The applicant/employee is notified of the HRMD's final decision upon conclusion of the review. (Id.)

D. <u>Reinstatement of Other FAA Employees</u>

The FAA has reinstated former employees, including air traffic controllers, pursuant to court orders, arbitration awards and settlement agreements. Such former employees have included persons who had been charged with or convicted of one or more criminal offenses, including criminal sexual misconduct with a child, child pornography, harassment of jurors/witnesses, substance abuse, and bribery. No evidence before the Court shows the FAA to have determined, prior to reinstatement, whether such individuals were "suitable" or "unsuitable" for employment. Nor does the evidence show such individuals to have been referred to HRMD at any

time for suitability determination. Nor does the evidence show that the FAA ever took an investigation into any of these individuals as to whether they were, in fact, ineligible for re-employment with the FAA. Finally, no evidence shows the FAA to have appealed or further challenged any court order or arbitration award which reinstated any of these individuals on the basis that such individuals were ineligible for reinstatement to the FAA, whether by their own misconduct or otherwise.

As of November 19, 2001, the date of the motion hearing before this Court, persons charged with and/or convicted of various criminal offenses, including embezzlement, fraud against the United States government, sexual misconduct with a child, battery, and illegal substance abuse, remained employed as air traffic controllers or had been promoted from such position within the FAA. No evidence before the Court shows the FAA to have ever determined whether such individuals were "suitable" or "unsuitable" for continued and/or re-employment with the FAA. Nor does the evidence show such individuals to have been referred to HRMD at any time for suitability determination. Nor does the evidence show that the FAA ever took an investigation into any of these individuals as to whether they were, in fact, ineligible for continued and/or re-employment with the FAA.

E. <u>Application of FAA Employment Regulations and Policies to Plaintiff</u>

At the motion hearing, defendant Secretary offered the testimony of FAA employee Patricia Healey, Personnel Services

Branch Manager in the Human Resources Management Division. Ms. Healey performs suitability determinations for FAA positions in the Eastern Region, including the position of ATCS. To make an official suitability determination, Ms. Healey reviews, inter alia, an applicant/employee's past employment records, credit ratings and arrest records. Ms. Healey also considers the particular circumstances surrounding the individual's conduct for which the matter was referred for suitability, agreeing that "it is important to have complete understanding of the facts and circumstances surrounding prior conduct before a suitability determination is made" so as to "insure both fairness to the applicant and to insure that the interests of the FAA are protected[.]" (Hrg. Tr. at 214.)

Ms. Healey opined that she did not "think [she] could find [plaintiff] suitable for employment" with the FAA inasmuch as plaintiff's conduct at BOA "seem[ed]" to fit within Category D of issues relating to honesty in that it constituted a pattern of dishonesty, thereby disqualifying plaintiff from FAA employment. (Hrg. Tr. at 215-16.) Ms. Healey's opinion was based upon only that information orally provided to her by Maria Sanchez, an attorney of record for defendant Secretary in the instant cause.[5] Ms. Healey was not provided with nor reviewed any documents

---

[5] Ms. Healey testified that she understood plaintiff to have forged a document to obtain a credit report that was not for her. (Hrg. Tr. at 216.) Other than that the information provided by Ms. Sanchez failed to include whether plaintiff obtained any benefit from her past misconduct (Hrg. Tr. at 218), no other evidence before the Court reflects what additional information, if any, was provided by Ms. Sanchez to Ms. Healey.

relating to plaintiff, including those necessary to make an official suitability determination.

Plaintiff was never referred to HRMD for suitability determination nor was an official suitability determination ever performed on plaintiff. No official determination has ever been made that under FAA employment regulations and policies, plaintiff is, in fact, unsuitable for reinstatement solely because of her post-termination conduct.

### III. Discussion

The only question presented for resolution in this Memorandum Opinion is whether plaintiff's post-termination conduct renders her ineligible for reinstatement as an ATCS with the FAA under the FAA's employment regulations, policies and actual employment practices. Defendant Secretary bears the burden of demonstrating to this Court by a preponderance of the evidence that the FAA employment policies, regulations and actual employment practices do in fact bar plaintiff's reinstatement or employment with the FAA as an ATCS. Sellers, 358 F.3d at 1065. For the following reasons, defendant has failed to meet this burden.

In April 2001, Maureen Woods determined not to reinstate plaintiff to her position as an ATCS with the FAA, finding that plaintiff's BOA conduct reflected adversely upon her honesty and integrity. Ms. Woods based this "rushed" decision solely on the oral representation of an FAA attorney and did not request additional information nor review any records relating to

plaintiff's previous employment or past performance as an ATCS. There is no evidence before the Court demonstrating that Ms. Woods relied upon any FAA employment regulations, policies and actual employment practices in making her subjective determination not to reinstate plaintiff; nor is there evidence that the procedure(s) used in making this determination, if any, complied with any such regulations, policies and actual employment practices. As such, the FAA's April 2001 decision not to reinstate plaintiff was a subjective choice and was not an official determination that FAA's employment regulations, policies and actual employment practices rendered plaintiff, in fact, ineligible for re-employment solely on account of her post-termination conduct.

The question then turns to this: Regardless of the April 2001 decision and the reasons given therefore, do the FAA's employment regulations, policies and actual employment practices nevertheless bar plaintiff from re-employment with the FAA solely because of her post-termination conduct? On the information and evidence before the Court, it cannot be said that defendant has met her burden of convincing this Court that they, in fact, do.

While it may be argued that within the four corners of the HROI, plaintiff's post-termination misconduct *may* render her unsuitable for employment, the evidence is insufficient to convince this Court that such conduct, *in fact*, does. First and foremost, no official suitability determination addressing plaintiff's potential reinstatement was ever performed. Therefore, the Court

does not have before it an official finding as to plaintiff's suitability for employment by the FAA. Second, to the extent Ms. Healey unofficially rendered her opinion regarding plaintiff's suitability, such opinion was based only upon information orally provided to her by FAA counsel regarding plaintiff's BOA employment. Ms. Healey reviewed no records relating to the matter, nor any other records which related to plaintiff in any way. Nor does the evidence show that prior to rendering her unofficial opinion, Ms. Healey was provided with complete information regarding the circumstances surrounding plaintiff's post-termination conduct despite her testimony that she agreed that to insure fairness to the applicant and the FAA, the adjudicator should have a complete understanding of the facts and circumstances relating to the prior conduct. Finally, as defined in the HROI and admitted by Ms. Healey, a number of subjective factors are considered by the HRMD adjudicator when exercising his/her discretion in determining an individual's conduct rating and resulting suitability rating. In the absence of an official suitability determination, it would be inappropriate for this Court to sit as an HRMD adjudicator and subjectively determine in the first instance whether plaintiff is, in fact, unsuitable for FAA employment under the factors set out in the HROI. The Court is even more reluctant to act in this role inasmuch as the record is unclear as to whether all information and records necessary to make such an official determination have been presented for review.

Nevertheless, assuming arguendo for the sake of this discussion only that upon consideration of all relevant material and information, plaintiff's post-termination misconduct renders her unsuitable for FAA employment under the standards articulated in the HROI, a review of the FAA's *actual employment practices* shows plaintiff's post-termination misconduct not to bar her reinstatement with the FAA. The evidence before the Court shows the FAA to have re-employed persons accused and/or convicted of criminal offenses involving conduct which at least equals, if not greatly exceeds, the seriousness of plaintiff's misconduct at issue in this cause. No evidence shows such persons to have undergone suitability determinations despite their misconduct, nor does the evidence show that the FAA challenged their reinstatement on the basis that their misconduct rendered them unsuitable for employment. Whether the reinstatement of these individuals was pursuant to court order, arbitration award or settlement agreement is of no instance. A review of the FAA's actual employment practices in these circumstances shows such reinstatements to have been effectuated without challenge to the employee's actual suitability for FAA employment. It is inconsistent, and appears to the undersigned to be disingenuous, for the FAA to invoke the HROI in its attempt to deny plaintiff reinstatement when its actual employment practice shows the strictures of the HROI to go unrecognized and unheeded in far more egregious cases of

misconduct.[6]

The inconsistency of the FAA's position and its application of HROI policy cannot be made more evident than on the facts of this case alone: On March 31, 2000, a jury sitting in this district found that John Joseph, a fellow ATCS employed by the FAA at Lambert, sexually assaulted plaintiff at her home in May 1996.[7] At the hearing on November 19, 2001, Ms. Woods testified that Joseph's conduct in assaulting and battering an FAA employee was more egregious than plaintiff's mismanagement of a file; however, as of November 19, 2001, Joseph remained employed as an ATCS at Lambert, and Ms. Woods had no knowledge of any action taken against Joseph on account of this egregious misconduct. (Hrg. Tr. at 198-99.) Addressing this apparent inconsistent application of FAA employment practices, defendant Secretary responds:

> [O]nce again in an attempt to divert the court's attention from her own misconduct, plaintiff argues that John Joseph was not disciplined or removed for actions which were more egregious than plaintiff's misconduct. Defendant submits that under Merit System Protection Board (MSPB) law an employer cannot discipline an employee twice for the same

---

[6] Indeed, the undersigned finds it unsettling that an HRMD adjudicator testified that, in her opinion, plaintiff was in fact unsuitable for employment under HROI standards when, admittedly, the information upon which she relied was incomplete and undocumented and was provided only by plaintiff's adversary who has a significant interest in the outcome of the instant litigation.

[7] The Eighth Circuit affirmed the jury's finding that Joseph committed both assault and battery upon plaintiff in relation to this sexual assault in May 1996. Sellers v. Mineta, 350 F.3d 706 (8th Cir. 2003).

- 17 -

> action. . . . [W]here an agency has imposed disciplinary or adverse action because of an employee's misconduct, it is barred from subsequently taking another adverse action for the same reasons. John Joseph, as established during the original trial on the merits received a reprimand. Mr. Joseph's supervisor was later reprimanded for taking insufficient action. While Joseph's reprimand may have been insufficient disciplinary action, under MSPB law the agency was precluded from taking any further steps against him. Plaintiff should not be permitted to avoid the consequences of her own actions by pointing to what was admittedly insufficient action against another employee, which the agency was later precluded from correcting.

(Secy's Reply at p. 8.) (Citations omitted.)

Contrary to defendant Secretary's argument, however, a review of the entire record in this cause, including the trial transcript, shows John Joseph never to have received any discipline of any kind from the FAA in relation to the sexual assault committed upon plaintiff in May 1996. In August 1996, plaintiff submitted a written complaint to FAA officials in which she complained of John Joseph's harassing telephone calls, continual requests for dates, an offensive letter, and a recent pinch on her rear end. On August 27, 1996, after neither admitting nor denying such conduct, John Joseph received a verbal reprimand in response to this complaint, with such disciplinary action later found to be insufficient. It was not until November 1996, three months after Joseph received the verbal reprimand, that plaintiff first reported the sexual assault to an EEO counselor, after which the FAA became aware of the claim. The discipline imposed by the FAA upon Joseph in August 1996 was

not and indeed *could* not be imposed for Joseph's misconduct in sexually assaulting plaintiff inasmuch as the FAA was unaware at that time that the assault occurred. Instead, Joseph's August 1996 reprimand was issued for only those claims made in plaintiff's August 1996 complaint, and specifically, for Joseph's harassing telephone calls, continual requests for dates, an offensive letter, and a pinch on the rear end. Joseph never received any disciplinary action in relation to the sexual assault he committed upon plaintiff in May 1996.

The undersigned does not quarrel with the Secretary's position that "where an agency has imposed disciplinary or adverse action because of an employee's misconduct, it is barred from subsequently taking another adverse action for the same reasons." The record here shows, however, that the agency never imposed disciplinary or adverse action upon Joseph because of his sexual assault upon plaintiff, and, despite its actual knowledge of this misconduct, never referred the matter for an official determination as to whether Joseph was rendered unsuitable for employment with the FAA under its employment regulations and policies because of this misconduct.

In light of the foregoing, therefore, it cannot be said on the evidence and information before the Court that the FAA regularly adheres to its employment policies and regulations in its reinstatement of former employees and/or continued employment of employees who have engaged in misconduct. Defendant Secretary has

failed to convince this Court by a preponderance of the evidence that under the FAA's actual employment practices, plaintiff is in fact barred from employment with the FAA solely on account of her post-termination misconduct at BOA.

## IV. Conclusion

For all of the foregoing reasons, the undersigned finds that on the existing record before the Court, defendant Secretary has failed to demonstrate by a preponderance of the evidence that plaintiff's post-termination conduct renders her ineligible for reinstatement as an Air Traffic Control Specialist with the Federal Aviation Administration under the FAA's employment regulations, policies and actual employment practices.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Secretary's request that plaintiff be considered barred from reinstatement solely on account of her post-termination conduct, and thereby precluded from an award of front pay, is **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE

Dated this _31st_ day of January, 2007.