UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WENDI FERGUSON SELLERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:97CV2260 FRB |
| ) | |
| MARY E. PETERS, Secretary of ) | |
| Transportation, U.S. Department ) | |
| of Transportation, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This cause is before the Court for determination of appropriate equitable relief to be awarded plaintiff Wendi Ferguson Sellers upon a jury's verdict and finding that plaintiff's employer, the Federal Aviation Administration (FAA), unlawfully discriminated against plaintiff in her employment as an Air Traffic Control Specialist (ATCS) on account of her gender and in retaliation for her complaints of sexual harassment which resulted in the unlawful termination of her employment, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, et seq. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Subsequent to the entry of the jury's favorable verdict, plaintiff filed a Motion for Equitable Relief in which she sought reinstatement to her position with the FAA as an ATCS, or, in the

alternative, an award of front pay. An evidentiary hearing on the motion was held November 19, 2001, and on December 13, 2001, the Court entered a Memorandum and Order, with Findings of Fact and Conclusions of Law, in which it determined that reinstatement to plaintiff's position with the FAA was impracticable in the circumstances. The Court therefore awarded front pay in lieu of reinstatement, with such award spanning a period of eight years and eight months and totaling $638,293.99.

Defendant Secretary of Transportation (Secretary) timely appealed the Court's determination, arguing that plaintiff's post-termination misconduct barred her reinstatement with the FAA and thereby precluded any award of front pay. In the alternative, the Secretary argued that the front pay award was excessive given plaintiff's failure to mitigate her damages. In its subsequent decision, the Eighth Circuit vacated the award of front pay and remanded the matter to this Court to determine, in the first instance, whether plaintiff's post-termination conduct actually precluded her reinstatement with the FAA and thus precluded an award of front pay. Sellers v. Mineta, 358 F.3d 1058 (8th Cir. 2004). In the event this Court were to determine plaintiff's conduct not to have had such a preclusive effect, the Eighth Circuit instructed the Court to reduce plaintiff's front pay award in accordance with its previous finding that plaintiff failed to reasonably mitigate her damages. Id. at 1066. In a concurring

opinion, however, Judge Loken observed that "if Sellers prevails on [the issue of post-termination conduct], then I think the district court should next revisit the issue of reinstatement" given that reinstatement is the preferred equitable remedy. Sellers, 358 F.3d at 1068 (Loken, J., concurring). Judge Loken further instructed that this Court should

> bear[] in mind that 'the passage of time may soften the most acrimonious of relationships,' United Paperworkers [Int'l Union v. Champion Int'l Corp.], 81 F.3d [798, ]805 [(8th Cir. 1996)], and determin[e] whether there are terms of reinstatement reasonably comparable to those proposed by Sellers that are not impractical because of either hostility above that normally incident to litigation or other sufficient reasons.

Id.

On January 31, 2007, this Court entered a Memorandum Opinion and determined, in the first instance, that plaintiff's post-termination conduct did not preclude her reinstatement. (*Memo. Opin.*, Docket No. 255.) The issue of an appropriate award of front pay was thus again placed before the Court and is addressed post.

However, in light of, and in deference to, the observations made in Judge Loken's concurring opinion, the Court also ordered the parties to submit briefs on whether the preferred equitable remedy of reinstatement was impracticable in the circumstances of this case. (*Memo. & Order*, Docket No. 256.) As

such, before turning to the Eighth Circuit's specific instruction to reconsider the amount of plaintiff's front pay award, the undersigned first considers Judge Loken's directive to explore whether "there are terms of reinstatement reasonably comparable to those proposed by Sellers that are not impractical because of either hostility above that normally incident to litigation or other sufficient reasons." For the following reasons, the Court finds there are not.

A. <u>Practicality of Reinstatement</u>

It is well settled that reinstatement is the preferred remedy in an unlawful termination case and that the alternative award of front pay is disfavored and available only when reinstatement is impracticable or impossible. <u>Salitros v. Chrysler Corp.</u>, 306 F.3d 562, 572 (8th Cir. 2002). "Extreme animosity between the employer and employee may make an amicable and productive work relationship impossible and thus justify an award of front pay." <u>Id.</u> <u>See also</u> <u>Mathieu v. Gopher News Co.</u>, 273 F.3d 769, 778 (8th Cir. 2001) ("[S]ubstantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement.") (internal quotation marks and citation omitted). Friction from the litigation process alone is an insufficient basis upon which to deny reinstatement. <u>Philipp v. ANR Freight Sys., Inc.</u>, 61 F.3d 669, 674 (8th Cir. 1995).

In this Court's previous Memorandum and Order denying

reinstatement (Docket No. 167), the undersigned noted the parties not to dispute that reinstatement to plaintiff's former position at Lambert-St. Louis International Airport (Lambert) was not an appropriate remedy. Despite plaintiff's request that she be reinstated at another FAA facility, the undersigned specifically found that "the level of acrimony between plaintiff and the FAA did not stop at the door of the Lambert facility." (*Memo. & Order*, Docket No. 167 at p. 8.)

> Union representatives, FAA legal counsel and
> FAA management, including the head of the
> Central Region, were aware of the continuing
> and escalating level of hostility at the
> Lambert facility, and indeed, in May 1997, an
> ultimate recommendation was made to the head
> of the region that both plaintiff and Joseph[1]
> be removed from federal service. Notably,
> only plaintiff was removed from federal
> service. Joseph continues to be employed by
> the FAA at Lambert. In addition, the fact
> that the FAA determines plaintiff unsuitable
> for her employment at any facility, without
> regard to plaintiff's capabilities to perform
> the job, indicates a continued unfavorable
> disposition toward plaintiff's employment with
> the FAA.

(Id. at p. 9.)

As shown in the Memorandum Opinion entered January 31, 2007, the level of such acrimony, including its duration, far exceeds that

---

[1]John Joseph, another ATCS employed at Lambert, began making unwanted sexual advances toward plaintiff in March 1996, with such advances taking place at the air traffic control tower at Lambert as well as at plaintiff's home, including a sexual assault at plaintiff's home.

normally incident to litigation. Without restating the factual findings and related conclusions here, a reading of the Memorandum Opinion in its entirety shows the FAA – without regard to official policies, procedures or actual employment practice – to have subjectively targeted plaintiff regarding her "ineligibility" for reinstatement. Indeed, in discussing the questionable nature of the FAA's selective invocation of its policies with regard to plaintiff, the Court specifically noted, "It is inconsistent, and appears to the undersigned to be disingenuous, for the FAA to invoke the [Human Resources Employment Operating Instructions] in its attempt to deny plaintiff reinstatement when its actual employment practice shows the strictures of the HROI to go unrecognized and unheeded in far more egregious cases of misconduct." (*Memo. Opin.* at pp. 16-17.) In addition, as set out in the Memorandum Opinion, the FAA's vehement opposition to plaintiff included arguments to the Court which were not based on fact and indeed, in one instance, argued purported facts which were in fact contrary to and unsupported by the record. (See *id.* at pp. 17-19.) Such opposition and arguments posited by the FAA came well over seven years after it terminated plaintiff's employment and nearly five years after a jury's finding that such termination was unlawful. As such, it does not appear from the record that the passage of time has softened this acrimonious relationship. Indeed, as further discussed below, the passage of time in this

cause has served to render plaintiff's reinstatement as an ATCS with the FAA even more impracticable.

In Evans v. State of Conn., 967 F. Supp. 673 (D. Conn. 1997), aff'd, 24 Fed. Appx. 35 (2d Cir. 2001) (Evans II), a police officer was terminated from his employment with the Connecticut State Police in December 1986. Evans v. State of Conn., 935 F. Supp. 145 (D. Conn. 1996), aff'd, 24 Fed. Appx. 35 (2d Cir. 2001) (Evans I). In 1990, plaintiff Evans brought a Title VII civil rights action alleging that such termination was on account of his race. In July 1996, after protracted litigation, the district court entered its opinion on evidence adduced during a bench trial and found plaintiff to have been unlawfully terminated from his employment with the Connecticut State Police on account of his race in violation of Title VII. Evans I, 935 F. Supp. at 162. The court subsequently held a hearing on the appropriate remedy and, in June 1997, entered an opinion awarding plaintiff back pay. Equitable relief in the form of reinstatement to the police force was denied. Finding, inter alia, that the award of back pay made plaintiff whole, the court denied plaintiff's request for front pay in lieu of reinstatement. Evans II, 967 F. Supp. at 684-85.

In its determination to deny plaintiff reinstatement, the court found it significant that nearly eleven years had passed since plaintiff's unlawful termination, opining that reinstatement would be impractical in such a circumstance:

> [R]einstatement would . . . be impractical given the nature and condition of the job, the considerable change the position has undergone, and the length of time plaintiff has been off the force. It would seem that a situation such as this, where the plaintiff has been out of the job for over a decade, particularly at a job where specialized training, equipment, and experience are required, is a prima facie case of the inappropriateness of reinstatement. Since Evans' termination eleven years ago, law enforcement agencies have upgraded their guns and equipment, reporting and computer systems and methods of arrests, all of which have increased the efficiency of the employee on the job. Defendants assert that if reinstated, plaintiff would have to go back to training for about a year to catch up and be educated on contemporary changes. Essentially, plaintiff would not be reinstated to the same position but would have to begin as a new enrollee in the police academy. Plaintiff has suffered a great loss of eleven years of experience and for that reason alone this court would find reinstatement inappropriate.

Evans II, 967 F. Supp. at 684 n.17.

In the instant cause, plaintiff Sellers was unlawfully terminated as an ATCS in September 1997 and has not worked in that capacity in the ten years since. It cannot be disputed that a high degree of specialized skill, training and aptitude is required to hold such a position with the FAA.[2] As such, if plaintiff were to

---

[2] At trial, plaintiff testified that when she first became an ATCS in 1987, she underwent a pre-testing process followed by a four-month period of full time, out-of-state training, after which she underwent final testing. Plaintiff testified that upon passing the final tests, she thereafter was required to undergo approximately eighteen months of on-the-job training with

be reinstated to her position as an ATCS with the FAA today, she would have to undergo a substantial amount of retraining before she could attain the skills required to adequately perform the job. As in Evans II, this Court finds the length of time plaintiff has been off of the job as an ATCS to render her reinstatement to such a specialized position inappropriate. When coupled with the continued hostility shown by the FAA, this Court can reach no other conclusion but that plaintiff's reinstatement as an ATCS with the FAA would be impracticable.

B.  Offer of Reinstatement

The Secretary was ordered on multiple occasions to submit a brief on the issue of the practicality of plaintiff's reinstatement. (See *Order*, Docket No. 249; *Memo. & Order*, Docket No. 256). Without briefing the issue as directed by the Court, the Secretary recently stated only that she is "willing to offer plaintiff the preferred remedy of reinstatement as a means of resolving this issue in this case [] subject to mandatory medical and security clearances," and, further, that she has "no additional argument other than what has already been briefed that would prevent Plaintiff Sellers from reinstatement." (*Deft.'s Memo.*,

---

continuous testing throughout. Plaintiff further testified that when an ATCS moves from one facility to another, s/he is required to undergo additional training at that new facility. As such, plaintiff testified that when she was transferred to the Lambert facility in July 1993, she underwent an additional twelve-month period of training with continuous testing throughout. (*Jury Trial Tr.*, vol. II at pp. 14-39.)

filed Mar. 2, 2007/Docket No. 258.)[3] In response, plaintiff contends that defendant's unspecified "willing[ness] to offer" reinstatement lacks sufficient information from which plaintiff can reasonably decide whether to accept or reject such "offer." Although provided an opportunity to do so, defendant did not submit a reply brief addressing plaintiff's contentions.

Where a discharged employee unreasonably rejects an unconditional offer of reinstatement, she forfeits any entitlement to front pay. Ford Motor Co. v. Equal Opportunity Comm'n, 458 U.S. 219, 241 (1982); Smith v. World Ins. Co., 38 F.3d 1456, 1466 (8th Cir. 1994). A vague offer of reinstatement coming post-trial and after an award of front pay is not unconditional. See Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 833-34 (8th Cir. 2005); Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 756-57 (D. Md. 2001); Bleimehl v. Eastman Kodak Co., No. Civ. 4-93-CV-30702, 1997 WL 33322218, at *14 n.7 (S.D. Iowa Jan 27, 1997). Nevertheless, regardless of an employer's offer of reinstatement, the employee's rejection thereof does not bar front pay where such reinstatement would continue to be impracticable or impossible. See Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1178 (10th Cir. 2003); Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 832 (3rd Cir. 1994). To hold otherwise would force a successful

---

[3] A review of the entire Court file fails to show any brief filed by defendant addressing the practicality or impracticality of reinstating plaintiff as an ATCS with the FAA.

plaintiff "into the untenable position of choosing between an irreparably damaged employment relationship with a hostile employer or foregoing the remedy that would make [her] whole." Abuan, 353 F.3d at 1178; see also, e.g., Kelley v. Airborne Freight Corp., 140 F.3d 335, 353 n.9 (1st Cir. 1998) (where court concludes that reinstatement would be impractical, employer's offer of reinstatement cannot be said to be objectively reasonable).

In this cause, it cannot be said that the Secretary's vague "willingness" to offer reinstatement, coming post-trial and after an award of front pay, is unconditional. Nevertheless, as set out above, to reinstate plaintiff to the position of ATCS with the FAA would be impracticable in this cause due to the continued level of hostility shown by the FAA toward plaintiff as well as the extended passage of time since plaintiff was last employed in the specialized position of an ATCS. Because of the continued impracticability of reinstatement, any rejection by plaintiff of the Secretary's vague willingness to offer such reinstatement does not serve to bar an award of front pay.

C.  Front Pay

In its majority opinion in Sellers, the Eighth Circuit held that "in the event that the district court determines on remand that Sellers' post-termination conduct did not in itself bar her reinstatement[,]" the issue of the amount of plaintiff's front pay award must be revisited and should be reduced given plaintiff's

failure to mitigate her damages by seeking comparable employment. Sellers, 358 F.3d at 1065, 1066. Inasmuch as this Court found that plaintiff's post-termination conduct did not, in fact, preclude her reinstatement, the plaintiff was ordered to submit documentation to the Court regarding her annual income and benefits so that an appropriate award of front pay could be determined. (*Order*, Docket No. 260.) Plaintiff timely complied with this directive.

In its previous award of front pay, this Court calculated an amount to be awarded from the date of verdict (March 31, 2000) through the date of Judgment (December 13, 2001); as well as an amount reflecting seven additional years of front pay. (*Memo. & Order*, Docket No. 167.) The Eighth Circuit determined this eight-year, eight-month award to constitute the whole of the front pay award and analyzed it as such. Sellers, 358 F.3d at 1066 n.2. Although the court of appeals considered this period to be "the outside limit of an appropriate front pay award" in the circumstances of this case, it nevertheless found no abuse of discretion in this Court's determination as to the length of the award. Id. at 1066. Accordingly, this Court is bound by the previous finding that an eight-year, eight-month period for an award of front pay is appropriate in this cause. See Klein v. Arkoma Prod. Co., 73 F.3d 779, 784 (8th Cir. 1996); see also Jones v. United States, 255 F.3d 507, 510 (8th Cir. 2001). As such, from the date of verdict, that is, March 31, 2000, plaintiff is entitled

to an award of front pay up to and including November 30, 2008.

The Eighth Circuit instructed this Court, however, to take into account plaintiff's failure to mitigate her damages and to reduce the annual amount used to calculate the award of front pay accordingly.

> The district court's award at a differential between the actual and FAA salaries does not adequately account for her failure to mitigate. As relevant on remand, the district court should determine an amount that Sellers could have earned if she had attempted to find comparable work and reduce any award accordingly.

Sellers, 358 F.3d at 1066.

In the original Memorandum and Order awarding front pay, the Court calculated plaintiff's award using undisputed evidence that plaintiff's annual salary (including benefits) would amount to $106,285.00 had she remained with the FAA. (*Memo. & Order*, Docket No. 167 at pp. 12, 14.) For purposes of calculating an appropriate front pay award here, the Court determines to continue to use this amount to reflect plaintiff's annual salary as an ATCS had she remained so employed. As such, for the Court's calculations, $106,285.00 is the starting point as plaintiff's annual ATCS salary. (See Appendix, Tables 1-4, Column (1).)

Also in the original Memorandum and Order, the Court found plaintiff to have failed to reasonably mitigate her damages:

> During the summer of 1997, prior to her termination from the FAA, plaintiff sought relatively low-wage employment with Trans World Airlines and Mid-America Airport, without success. In December 1997, subsequent to her termination, plaintiff sent her resume to three educational facilities seeking employment as an air traffic control instructor, without success. Plaintiff sought no other employment in the aviation field until April 7, 2000, and none thereafter.

(*Memo. & Order*, Docket No. 167 at p. 5.)

Instead, as noted by the Court, plaintiff worked from October 1997 through November 2001 as a personal banker and as an office manager, earning an annual salary between $24,000.00 and $25,000.00. (*Id.* at 4-5; *Memo. Opin.*, Docket No. 255 at p. 5.) As shown by plaintiff's recent submission to the Court, plaintiff remained employed as an office manager through July 12, 2003. (*Pltf.'s Memo.*, Docket No. 261.) On July 14, 2003, plaintiff began employment as an Assistant Airport Director (AAD) at St. Louis Downtown Airport, owned and operated by Bi-State Development Agency, and remains so employed to date. (*Id.*)

In the Appendix attached to the instant Memorandum and Order, plaintiff's stages of employment are delineated as follows:

- Table 1: Years 2000 through 2002, during which plaintiff failed to mitigate damages by failing to seek comparable employment;

- Table 2: Year 2003, during which plaintiff worked as an office manager through July 12 and began work in comparable

- 14 -

employment on July 14 as an assistant airport director;

Table 3: Years 2004 through 2007, during which plaintiff worked in comparable employment as an assistant airport director; and

Table 4: Year 2008, during which plaintiff will sustain future losses.

1. *Table 1 – Failure to Mitigate*

At the time plaintiff's FAA employment terminated in September 1997, and continuing thereafter, plaintiff was qualified for "employment with private aviation contractors, including jobs such as airline and/or law enforcement dispatcher, consultant, or with private air traffic control towers[.]" (*Memo. & Order*, Docket No. 167 at p. 5.) Although plaintiff sought no such employment, her qualifications nevertheless placed her squarely within the field of "Airfield Operations Specialists" (AOS) who, according to the United States Department of Labor's Bureau of Labor Statistics (BLS),

> [e]nsure the safe takeoff and landing of commercial and military aircraft. Duties include coordination between air-traffic control and maintenance personnel; dispatching; using airfield landing and navigational aids; implementing airfield safety procedures; monitoring and maintaining flight records; and applying knowledge of weather information.

Bureau of Labor Statistics, U.S. Dep't of Labor, *Occupational Employment Statistics, 2000 National Occupational Employment & Wage Estimates,* 53-2022 Airfield Operations Specialists, *available at* http://www.bls.gov./oes/2000/oes532022.htm.

The annual mean wage for such work as an AOS, as identified by the BLS, is set out in the Appendix at Table 1, Column (2), from the date of verdict through end-of-year 2002. Accordingly, plaintiff's front pay award from the date of verdict (March 31, 2000) through December 31, 2002, should be the difference between plaintiff's annual ATCS salary and such wage she could have earned in comparable employment as an AOS (see Appendix, Table 1), for a total of $184,701.00.

 2. *Table 2 – Combination of Failure to Mitigate/Comparable Employment*

From January 1 through July 12, 2003, plaintiff worked as an office manager and earned $31,054.00 during such period. (*Pltf.'s Memo.*, Docket No. 261 at p. 2.)[4] Plaintiff thereafter obtained comparable employment as an Assistant Airport Director, utilizing her qualifications as set out supra at p. 15, and began such employment on July 14, 2003. Plaintiff earned $22,164.00 in this position for the remainder of 2003. (*Id.*) As such, for the entire year of 2003, plaintiff earned a combined total of $53,218.00 in actual wages. Because plaintiff's actual earnings as an office manager from January 1 through July 12, 2003, exceed the

---

[4]Although plaintiff questions this figure reflected on her relevant 2003 W-2 form, she has presented no evidence showing such figure to be inaccurate.

BLS mean wage for an AOS during this period,[5] the undersigned determines to calculate plaintiff's front pay award during this period with her actual earnings so as to avoid awarding a windfall to plaintiff.

Accordingly, plaintiff's front pay award for the year 2003 should be the difference between plaintiff's annual ATCS salary and her actual wages earned during such period, for a total of $53,067.00.

3. *Table 3 – Comparable Employment*

During the years 2004 through 2007, plaintiff worked in comparable employment as AAD at St. Louis Downtown Airport. As such, the undersigned determines plaintiff's actual salary in her position as an AAD to represent the full extent to which plaintiff could mitigate her damages. Accordingly, plaintiff's front pay award for the years 2004 through 2007 should be the difference between plaintiff's annual ATCS salary and her actual wages earned as an AAD (see Appendix, Table 3), for a total of $207,535.00.

4. *Table 4 – Future Losses*

Finally, as discussed supra at pp. 12-13, plaintiff is entitled to a front pay award up to and including November 30,

---

[5]For this period of 194 days in 2003, the BLS mean wage for an AOS was $23,057.00. Bureau of Labor Statistics, U.S. Dep't of Labor, *Occupational Employment Statistics, 2000 National Occupational Employment & Wages May, 2003,* 53-2022 Airfield Operations Specialists, *available at* http://www.bls.gov./oes/2003/may/oes532022.htm.

2008. Discounting plaintiff's projected future losses by a rate of two and one-half percent (2.5%),[6] the present value of plaintiff's future losses through November 30, 2008, is $44,237.00. See Appendix, Table 4.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff Wendi Ferguson Sellers shall be awarded front pay in the amount of Four Hundred Eighty-Nine Thousand, Five Hundred Forty and 00/100 Dollars ($489,540.00) which is comprised of Four Hundred Forty-Five Thousand, Three Hundred Three and 00/100 ($445,303.00) in losses from verdict to date; and Forty-Four Thousand, Two Hundred Thirty-Seven and 00/100 Dollars ($44,237.00) in future losses.

An appropriate Amended Judgment shall accompany this Memorandum and Order.

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this _28th_ day of November, 2007.

---

[6]This discount rate was previously proposed by the plaintiff and was undisputed by the defendant. See *Memo. & Order*, Docket No. 167 at pp. 12, 14. The Court again uses this discount rate and its associated formula to calculate the present value of plaintiff's future losses.